**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| August Jeremy Hoenack,<br><br>   Plaintiff,<br><br>v.<br><br>Litchfield Elementary School District No. 79, *et al.*,<br><br>   Defendants. | No. CV-22-01903-PHX-JJT<br><br>**ORDER** |

Three motions are at issue. First, Defendant Litchfield Elementary School District No. 79 filed a Motion for Attorneys' Fees and Non-Taxable Costs (Doc. 95, Fees Mot.), to which *pro se* Plaintiff August Jeremy Hoenack filed a Response (Doc. 98, Response) and Defendant filed a Reply (Doc. 101, Reply). Second, Plaintiff filed a Motion to Extend Time (Doc. 96) requesting a ten-day extension to the filing deadline for a motion for reconsideration regarding the Court's prior order awarding summary judgment against Plaintiff. *See* LRCiv 7.2(g)(2). Defendant has not opposed Plaintiff's motion to extend. Accordingly, the Court grants it. Third, Plaintiff filed a Motion to Reconsider the Court's Order and Ruling on Defendant's Motion for Summary Judgment (Doc. 97, Reconsideration Mot.), which is timely in light of the Court's extension of the relevant deadline. The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court denies Plaintiff's motion for reconsideration and grants in part Defendant's motion for attorney fees.

## I. Plaintiff's Motion for Reconsideration

The parties are familiar with the factual and procedural background of this case, which the Court described in its order awarding summary judgment against Plaintiff. (Doc. 92.) Plaintiff asserts in his motion for reconsideration that that order was "not based on applicable laws or facts" and that it should accordingly be vacated. (Reconsideration Mot. at 1.) A successful reconsideration motion must present "a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g)(1). Plaintiff's motion demonstrates neither manifest error nor new facts or law. Instead, it (1) presents a legal theory based on established law that Plaintiff could have asserted in his briefing at summary judgment but chose not to and (2) argues that the Court failed to perceive certain established facts that Plaintiff declined to mention in his briefing. Accordingly, the Court could deny Plaintiff's motion summarily. "Although we construe *pleadings* liberally in their favor, pro se litigants are bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (emphasis added). Nevertheless, in the interest of justice, the Court will examine the substance of Plaintiff's motion.

### A. Legislative Immunity

Plaintiff's primary argument is that the Court committed an error by applying the standard announced in *White v. City of Norwalk*, 900 F.2d 1421, 1425–26 (9th Cir. 1990). That case held that a public body, such as a school board, does not violate the First Amendment when it "restricts public speakers to the subject at hand" or stops a speaker from speaking "if his speech becomes irrelevant or repetitious." *Id.* "A speaker may disrupt a Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies." *Id.* In regulating its own meetings, a public body enjoys "a great deal of discretion." *Id.* Although this discretion is broad, it does not permit a speaker to be "stopped from speaking because the moderator disagrees with the viewpoint he is expressing." *Id.* Plaintiff objects to the Court's application of the *White* standard to this case. However, Plaintiff has waived this argument, as Defendant asserted the applicability

of *White* in its motion for summary judgement, (Doc. 73 at 9), and Plaintiff did not contest the case's applicability in his responsive memorandum, (*see* Doc. 77). *See Brown v. Sperber-Porter*, No. CV-16-02801-PHX-SRB, 2017 WL 10410091, at *4 (D. Ariz. Dec. 20, 2017) (noting that "a court may consider an argument conceded when a party fails to counter it"). In arguing against the relevance of *White* now, Plaintiff fails to adduce any legal authority that he could not have offered at summary judgment. Nevertheless, in the interest of accuracy, the Court will address Plaintiff's substantive argument.

Plaintiff contends that the *White* standard is inapplicable to the facts of this case and that the school board actually possessed no discretion whatsoever and no ability to regulate Plaintiff's speech at all. (Reconsideration Mot. at 2–5.) Plaintiff's position is that elected members of quasi-legislative bodies such as school boards enjoy greater First Amendment protections than do their fellow citizens. According to Plaintiff, the *White* standard applies to members of the public who participate in public meetings but not to elected officials who participate in those same meetings. Plaintiff grounds this proposition in the doctrine of legislative immunity. He is quite forthright in his argumentation, stating that his speech must be categorically "unrestrained" and that he, "as a legislator, had the right to free expression, higher than any discretionary concerns." (Reconsideration Mot. at 2.) Plaintiff misunderstands the nature of legislative immunity.

"Absolute legislative immunity is rooted in common law and embodied in both the United States and the Arizona Constitutions and the principles underlying separation of governmental powers." *Mesnard v. Campagnolo*, 251 Ariz. 244, 248 ¶ 12 (2021). "When applicable, the doctrine prevents legislators, their aides, and their contractors from being criminally prosecuted or held civilly liable for their legislative activities." *Id.* Thus, legislative immunity is a *defense* to liability, not a basis upon which suit can be affirmatively brought. The Court is aware of no cases in which the doctrine of legislative immunity has been used in an offensive capacity. Nor is the Court aware of any case in which a court has held that the doctrine creates a heightened First Amendment right that an elected official may assert for a purpose other than defending against liability. The case

upon which Defendant relies, like all other cases the Court has encountered, is a garden-variety case in which a legislative speaker was entitled to absolute immunity for the purpose of defending against a defamation claim. *See Sanchez v. Coxon*, 175 Ariz. 93 (1993). Although the Court is not apprised of any cases in which a plaintiff has attempted to use legislative immunity as a sword, there is at least one case in which a federal court has rejected a similar use of judicial immunity. *See Marshall v. N.Y. State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 292 (W.D.N.Y. 2019) (rejecting the invocation of quasi-judicial immunity where a public official "does not assert the doctrine as a defensive guard against liability for a decision rendered, but instead, brandishes it as a sword to beat back its responsibility under federal law"). In the absence of any authority indicating otherwise, the Court rejects Plaintiff's argument that the doctrine of legislative immunity confers upon him a greater First Amendment right than is enjoyed by the public at large. Therefore, as explained in its prior order, the Court concludes that the *White* standard governs a school board's regulation of speech at a public meeting, irrespective of from whose mouth the speech originates. Of course, the application of the *White* standard might differ as between an elected official and a member of the public, as a person's status might impact when his speech becomes "too long," "unduly repetitious," "irrelevant," or "disruptive." *See White*, 900 F.2d at 1425–26. The Court simply reiterates here that Plaintiff's speech was subject to reasonable regulation under *White* and that this regulation involved the discretion inherent in the regulation of speech at a public meeting convened for a specific purpose. Plaintiff's argument therefore fails.

### B.     Factual Inaccuracy

The remainder of Plaintiff's motion consists of bald and erroneous accusations that the Court ignored or misconstrued the facts presented to it, particularly those contained in Plaintiff's submission of video evidence. Few of these contentions deserve attention. The only one of Plaintiff's factual assertions that has merit concerns the agenda from the board meeting held on April 27, 2021. As Plaintiff correctly notes, the agenda for that meeting stated that "[t]he Governing Board members will discuss the Governing Board Equity

Statement adopted on December 8, 2020." (Reconsideration Mot. at 6–7.) However, this fact was buried in Plaintiff's statement of facts and the attachments thereto. (*See* Doc. 77-4, Ex. 12.) Plaintiff did not mention this fact in his memorandum opposing summary judgment. (*See* Doc. 77.) "Memoranda of law filed in support of or in opposition to a motion for summary judgment [] must include citations to the specific paragraph in the statement of facts that supports assertions made in the memoranda regarding any material fact on which the party relies in support of or in opposition to the motion." LRCiv 56.1(e). Therefore, the Court need not consider Plaintiff's belated factual argumentation. *See Ghazali*, 46 F.3d at 54. However, procedure aside, this fact does not change the Court's ruling.

The Court acknowledges that its prior order implied that Plaintiff had strayed from the written agenda during his speech at the April 27 meeting. This was inaccurate. Plaintiff never deviated from the written agenda. But this fact is of little consequence. Plaintiff repeatedly accuses the Court of ignoring the video evidence, but the Court has done no such thing. It reviewed all of the video evidence concerning this meeting, including both Plaintiff's extremely truncated video submission and Defendant's more robust video submission. And in ruling on the instant motion, the Court again reviewed the relevant video evidence in its entirety. It is clear from the video that Plaintiff was never impermissibly silenced. He spoke numerous times at length, and he was never materially prevented from saying what he wanted to say. The board and its consultant would occasionally interrupt Plaintiff to ensure that his speech addressed the immediate subject at hand, that it fit within the overall structure of the meeting, and that it was not unduly aggressive or long-winded, but these interruptions hardly amount to unconstitutional silencing. The video plainly shows that Defendant's actions were well within its permissible discretion under *White*.

Nor did Defendant violate Arizona's open meeting law by confining the discussion to the subject of equity statements generally, despite the written agenda stating that the discussion would include an examination of a specific past equity statement. The open

meeting law prohibits a public body from addressing matters not on the agenda. It does not require a public body to address each and every matter on an agenda. *See* A.R.S. § 38-431.02(H) ("The public body may discuss, consider or make decisions only on matters listed on the agenda and other matters related thereto."); *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 526 ¶ 25 (2021) ("The legislature enacted the law 'to open the conduct of the business of government to the scrutiny of the public and to ban decision-making in secret.'" (quoting *Karol v. Bd. of Ed. Trustees*, 122 Ariz. 95, 97 (1979))). Plaintiff cites no cases indicating that a public body commits an actionable violation by not addressing an agendized item. Thus, to the extent Defendant failed to discuss its past equity statement, such failure does not constitute a violation of Arizona's open meeting law upon which Plaintiff could bring suit. As already noted, neither Plaintiff nor any member of the public was prohibited from speaking. Defendant's conduct at the April 27 meeting was therefore within the ambit of both the First Amendment and Arizona's open meeting law. Although the Court incorrectly implied that Plaintiff strayed from the agenda at the April 27 meeting, this is immaterial. The video evidence shows that Plaintiff was not meaningfully prevented from saying what he wanted to say at that meeting. Moreover, where Plaintiff *was* silenced, such as at the March 3 meeting, the video evidence plainly shows that his speech was digressive, combative, long-winded, and disruptive to the purpose of the meeting. Thus, the board's restriction of his speech did not run afoul of *White*.

The remainder of Plaintiff's motion consists of impermissible relitigation of matters already disposed of. Accordingly, the Court will deny Plaintiff's motion for reconsideration.

## II. Defendant's Motion for Attorney Fees

Defendant requests attorney fees under 42 U.S.C. § 1988(b) and A.R.S. § 12-349(A)(1). (Fees Mot. at 1.) The basis of the fees request is essentially the same under both statutes. A district court may issue a discretionary award of fees under § 1988(b) to a prevailing defendant "upon a finding that the plaintiff's action was frivolous, unreasonable,

or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421 (1978). Similarly, under § 12-349(A)(1), courts are required to award attorney fees to a prevailing defendant if a plaintiff "[b]rings or defends a claim without substantial justification." The phrase "without substantial justification" means that the claim "is groundless and is not made in good faith." A.R.S. § 12-349(F). As the Arizona Supreme Court recently clarified, the condition that a claim not have been made in good faith does not require that the plaintiff made the claim in affirmative bad faith. *Ariz. Republican Party v. Richer*, 257 Ariz. 210, 367 ¶¶ 37–38 (2024). Instead, a claim is not made in good faith if the claim was groundless and the party knew or should have known of the claim's groundlessness. *Id.* This assessment is objective. *Id.* at 368 ¶ 40. Courts must evaluate whether a claim was not brought in good faith against the standard of what a reasonable person would have done in similar circumstances. *Id.* Therefore, the state and federal fee statutes largely track one another. The primary difference is that the state statute is mandatory, whereas the federal statute is permissive. *See* A.R.S. § 12-349(A) (providing that "the court *shall* assess reasonable attorney fees" if a party does one of four enumerated acts (emphasis added)). Under both statutes, courts must specifically explain why an award of fees is warranted. *See* A.R.S. § 12-350 (requiring that a court awarding fees pursuant to § 12-349 "shall set forth the specific reasons for the award"); *Miller v. L.A. Cnty. Bd. of Educ.*, 827 F.2d 617, 620 (9th Cir. 1987). This is especially true where, as here, the losing party has proceeded *pro se*. *Miller*, 827 F.2d at 620 ("The *Christiansburg* standard is applied with particular strictness in cases where the plaintiff proceeds pro se.").

In this case, a partial award of fees is justified. Plaintiff's claims arose under the First Amendment, Arizona's open meeting law, and Arizona tort law. "[P]ro se plaintiffs cannot simply be assumed to have the same ability as a plaintiff represented by counsel to recognize the objective merit (or lack of merit) of a claim." *Id.* However, the First Amendment is a legal doctrine that is uniquely familiar to laypersons. As the video evidence and the record as a whole indicate, Plaintiff adopted a scorched-earth rhetorical

strategy whereby he objected to Defendant's embrace of critical race theory with aggression and combativeness. His speech at board meetings was routinely belligerent, personally insulting, long-winded, and tangential. It does not require legal training to understand that the board's regulation of such speech was consistent with the First Amendment. Plaintiff cannot create an environment in which the board has little choice but to regulate his speech, and then himself bring suit asserting that that regulation constitutes a deprivation of his rights. The average person would understand such a claim to be unreasonable and groundless. Plaintiff should have known that his First Amendment claim lacked merit from inception. The Ninth Circuit has counseled that an award of attorney fees against a *pro se* plaintiff is inappropriate "where the court is unable to conclude that the action may be dismissed without proceeding to trial." *Id.* However, despite the court's use of the technical term "dismiss," it is clear that a summary judgment is tantamount to a dismissal for purposes of the attorney fees analysis. *See Id.* (holding that fees were inappropriate because "the district court allowed Miller's suit to proceed to trial despite the Superintendent's motion for summary judgment"). The Court's disposition of all of Plaintiff's claims at summary judgment therefore does not militate against an award of fees. The Court concludes that Defendant is entitled to an award of fees regarding the First Amendment claims under both fee statutes, as both statutes turn upon objective groundlessness and do not require a finding of subjective bad faith.

The same cannot be said of Plaintiff's claims arising under Arizona's open meeting law, which is a collection of somewhat dense statutes with which laypersons are generally unfamiliar. Moreover, Plaintiff's claims brought under Arizona's open meeting law were not as frivolous as those brought under the First Amendment. As the Arizona Supreme Court recently recognized, a claim may constitute a losing "long shot" without being so devoid of merit as to be groundless. *Ariz. Republican Party*, 257 Ariz. at 362 ¶ 15. The Court concluded in its prior order that the *White* standard complements, rather than conflicts with, Arizona's open meeting law, but that conclusion was not necessarily clear to a layperson from the start. Similarly, although the Court concludes herein that Arizona's

open meeting law does not affirmatively require a public body to fully address every item on an agenda, particularly where the person seeking to address an item intends to do so in a disruptive manner, the Court cannot say that that conclusion is so obvious under Arizona statutory law as to warrant an issuance of attorney fees against Plaintiff. Therefore, to the extent that Defendant's fees can be disaggregated on a claim-by-claim basis, Defendant is not entitled to its fees incurred in the defense of Plaintiff's claims arising under Arizona's open meeting law.

Finally, Plaintiff's claims arising under Arizona tort law were objectively frivolous and thus properly form the basis of a fees award. To the extent that they relied on a showing that Defendant illegally suppressed his speech, they were unreasonable on the same grounds that the speech claims themselves were unreasonable. And to the extent that the tort claims possessed vitality separately from the First Amendment claims, they were unreasonable as repetitious litigation. "[R]epeated attempts by a pro se plaintiff to bring a claim previously found to be frivolous militates in favor of awarding attorney's fees to a prevailing defendant." *Miller*, 827 F.2d at 620. "In such a situation, it is entirely appropriate to hold the plaintiff responsible for knowing that the claim is groundless." *Id.* In this case, many of the factual assertions and legal theories underlying Plaintiff's tort claims had already been adjudicated as meritless by the Arizona state judiciary. His allegations and legal arguments relating to the injunction against harassment had already been rejected by the Maricopa County Superior Court, and his allegations and legal arguments relating to the publication of his concealed-carry request had already been rejected by the Maricopa County Superior Court and the Arizona Court of Appeals. (*See* Doc. 92 at 16–18.) In attempting to relitigate those claims, Plaintiff presented no new facts to the Court. Therefore, Defendant is entitled to an award of attorney fees under both fee statutes for the expenses incurred in defending Plaintiff's tort claims.

The Court's conclusion that an award of fees is justified does not end the analysis. Under both statutes, the Court retains broad discretion in fixing the amount of fees. This is clear from the text of § 1988(b), as that provision's language is permissive. And although

the text of § 12-349 is mandatory, Arizona courts have held that the *amount* of a mandatory award is nevertheless subject to judicial discretion. *Cruz v. Miranda*, No. 2 CA-CV 2015-0131, 2016 WL 1612748, at *4 ¶ 18 (Ariz. Ct. App. Apr. 21, 2016) ("Therefore, although an award of attorney fees and costs is mandatory upon finding a party engaged in the conducted [sic] enumerated in § 12-349(A)(1) through (4), the court retains discretion to determine a reasonable amount of attorney fees and costs to award."). Under both statutes, and particularly in a case involving a losing *pro se* litigant, consideration of the losing party's financial status is of paramount importance in determining the amount of fees to be awarded. *See Miller*, 827 F.2d at 621 ("In addition to the *Kerr* factors, a district court in cases involving 42 U.S.C. §§ 1981, 1983 or Title VII should consider the financial resources of the plaintiff in awarding fees to a prevailing defendant. . . . While an award of attorney's fees for a frivolous lawsuit may be necessary to fulfill the deterrent purposes of 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k), the award should not subject the plaintiff to financial ruin."); A.R.S. § 12-350(4) ("[T]he court . . . may include the following factors, as relevant, in its consideration: . . . The relative financial positions of the parties involved."). Ordinarily, the "party asserting a financial hardship must present prima facie evidence of that hardship." *Cruz*, 2016 WL 1612748, at *7 ¶ 28. In this case, Plaintiff has presented no evidence of financial hardship. Indeed, his objection to Defendant's request for fees consists entirely of an attempt to relitigate the merits of the Court's summary judgment order. Nevertheless, the Court construes the evidentiary burden loosely in light of Plaintiff's status as a *pro se* litigant. Plaintiff avers in his extension motion that he is "76 years old, 11 years past retirement." (Doc. 96 at 2.) He also states that he "could not pay his own attorney fees, thus he was pro per." (Response at 9.) It follows that he likewise cannot afford to pay for Defendant's attorneys. Given Plaintiff's status as a *pro se* litigant, these assertions are sufficient to establish the propriety of a reduction in the amount of attorney fees to be awarded.

Defendant requests $121,940.50 in attorney and paralegal fees. Plaintiff does not challenge the reasonableness of this request, which in any event appears reasonable

according to the Court's independent review. In light of the substantial reduction that the Court will impose as a result of Plaintiff's financial status, there would be no utility in conducting an independent review of the *Kerr* factors, as any adjustment merited thereunder would be subsumed into the adjustment resulting from Plaintiff's status as a non-wealthy *pro se* litigant. Moreover, upon independent review by the Court, no *Kerr* adjustment is warranted.

The Court, in its discretion, shall award Defendant $8,000.00 in attorney fees. An award of greater magnitude would likely impose "financial ruin" upon Plaintiff. *See Miller*, 827 F.2d at 621. This award includes a substantial downward reduction reflecting Plaintiff's financial and *pro se* status, as well as the fact that his claims arising under Arizona's open meeting law do not merit an award of fees in the first place. Defendant also requests $1,355.00 in non-taxable costs. Defendant is entitled to this award, and it is reasonable in basis and amount.

**IT IS THEREFORE ORDERED** granting Plaintiff's Motion to Extend Time. (Doc. 96.)

**IT IS FURTHER ORDERED** denying Plaintiff's Motion to Reconsider the Court's Order and Ruling on Defendant's Motion for Summary Judgement. (Doc. 97.)

**IT IS FURTHER ORDERED** granting in part Defendant's Motion for Attorneys' Fees and Non-Taxable Costs (Doc. 95) and awarding Defendant $8,000.00 in attorney fees and $1,355.40 in non-taxable costs.

Dated this 20th day of November, 2024.

Honorable John J. Tuchi
United States District Judge